IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BOBBY RAYMOND ANDERSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-146-Z-BR |
| | § | |
| DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Bobby Raymond Anderson ("Petitioner") filed a *Petition for a Writ of Habeas Corpus by a Person in State Custody*, challenging the constitutional and statutory validity of his state court convictions and resultant 20-year sentences for ten counts of indecency with a child involving the same child victim. (ECF 1[1], at 2[2]). Petitioner also challenges the state trial judge's decision to stack his sentences – resulting in a cumulative 200-year sentence. (*Id.*). The undersigned United States Magistrate Judge recommends Petitioner's application for federal habeas corpus relief be DENIED.

## I.     PROCEDURAL HISTORY

On November 14, 2012, Petitioner was charged by grand jury indictment in Hutchinson County, Texas, in Cause No. 10931, with ten counts of indecency with a child under the age of seventeen years, in violation of Texas Penal Code 21.11. (*See* ECF 15-12, at 19-20; ECF 15-25, at 7-8). The offenses involved a single victim, with multiple instances of abuse alleged between 2008 and 2011. (*See id.*). The state filed its notice of intent to consolidate these cases, and the judge ordered the

---

[1] The "ECF __" reference is to the number of the item on the docket in this civil action.

[2] The reference is to the page identification number ("PageID") reflected at the top right corner of the document.

cases consolidated for trial. (ECF 15-12, at 36-37, 182). After Petitioner entered a plea of not guilty, a jury trial commenced in the 84th District Court for Hutchinson County, Texas, on January 19, 2015. (ECF 15-14, at 1). The jury found Petitioner guilty of each count in the indictment and punishment was assessed for *each count* as 20 years of incarceration and a $10,000.00 fine. (ECF 15-19, at 63-67). Judgment was entered on each count in accordance with the jury's verdicts and the state trial judge ordered the sentences to run consecutively, resulting in a 200-year cumulative sentence. (ECF 15-12, at 185-193) ("The Court further finds that pursuant to Section 3.03(b)(2)(A) of the Texas Penal Code, the ten aforementioned sentences shall run consecutive to one another.").

Petitioner filed a direct appeal of his conviction and sentence. (*Id.*, at 195). The Seventh District Court of Appeals of Amarillo, Texas affirmed Petitioner's judgment. *Anderson v. State*, No. 07–15–00065–CR, 2017 WL 167593 (Tex. App.—Amarillo Jan. 10, 2017); (ECF 15-10, at 22-39). The Texas Court of Criminal Appeals ("TCCA") refused Anderson's petition for discretionary review. *Anderson v. State*, No. PD-0137-17 (Tex. Crim. App. Apr. 26, 2017).

Petitioner then challenged his conviction through a state application for writ of habeas corpus, filed on February 14, 2018. (ECF 15-25, at 259-276). The trial judge did not enter findings of fact or conclusions of law, and the writ was denied by operation of law and forwarded to the TCCA. On June 20, 2018, the TCCA denied his application without written order. (ECF 15-21, at 1). Petitioner's motion for reconsideration of the TCCA's order, based on bias of the state trial judge during habeas proceedings, was likewise denied. (ECF 15-23, at 1-3). Petitioner filed the instant federal application on August 6, 2018. (ECF 1, at 1).

## II.   FACTUAL HISTORY

The Seventh Court of Appeals in Amarillo summarized the facts of this case in the opinion affirming the judgment and sentence of the trial court; additionally, the Respondent's Answer includes the summary of a section of the facts from this opinion. (ECF 15-10, at 22-39; ECF 12, at 4-

7). The Court adopts this summation without need to include it herein. As Petitioner could not challenge the effectiveness of trial counsel during direct appeal, the appellate court opinion does not address all the specific facts relevant to those challenges. (*See id*.).

Particularly relevant to the Court's analysis, the state introduced testimony from two prior victims during Petitioner's trial, after providing notice to the Petitioner of the intent to provide this evidence. (ECF 12, at 6; ECF 15-12, at 38, 100). During the testimony of one of these witnesses, the prior victim said she wished she had come forward sooner because the Petitioner later "hurt another victim." (ECF 15-17, at 202). Trial counsel for Petitioner submitted an affidavit indicating he knew this testimony was inadmissible and he failed to object to this testimony. (ECF 15-25, at 286-288).

During the police investigation into his conduct prior to his indictment, Petitioner gave a statement to Officer Durk Downs, indicating he had touched the victim's breasts, over her clothes, but that such touching was "not on purpose." (ECF 15-17, at 95). Officer Downs testified that he considered certain statements made by the Petitioner during the police interview to be "admissions" of conduct contained in the indictment. (*Id.*, at 142-143).

Petitioner's counsel indicated he failed to object to this "inadmissible" testimony by Officer Downs or request a mistrial. (ECF 15-25, at 286-288). An interview conducted by Officer Downs of the Petitioner was played to the jury, and counsel failed to object in advance to the portion of the video containing a reference to Officer Down's request that Petitioner take a polygraph examination (which Petitioner can be heard refusing on the video, followed by a request for counsel). (ECF 15-17, at 72-73). However, counsel did object to this evidence, and the jury was instructed to disregard it. (*Id.*).

While questioning the victim named in the indictment concerning an incident alleged to have occurred when she was approximately three (3) years old, Petitioner's counsel asked the victim if she

was sure this incident occurred in Texas, rather than at a family member's house in Kansas. (ECF 15-16, at 114-115). The testimony was as follows:

> Q. The incident that you had described when you were two or three, or three or four years old -- and correct me if I'm wrong. I think you testified that in Amarillo, that's when you were sleeping between your mom and dad.
> A. Yes, sir.
> Q. Is that correct?
> A. Yes, sir.
> Q. Your mother is the one that told you about that, isn't she?
> A. No. I had the memory myself. She just was the one that told me my age.
> Q. And you specifically remember that being in Amarillo?
> A. Yes, sir, I do.
> Q. Are you sure that it wasn't in Kansas?
> A. No, I'm positive, sir. I remember the bedroom.
> Q. Are you sure that it was -- it did not happen at [Petitioner's] brother's house in Kansas?
> A. I don't ever remember going to his brother's house in Kansas.
> Q. Well, you were two or three or four years old, depending on whatever age you were; is that correct?
> A. I was three, yes, sir.
> Q. Do you remember anything else, Ms. [], about being three years old?
> A. I remember going to my dad's mother's house in Houston. I was three or four.
> Q. Anything else?
> A. Not a whole lot. No, sir.
> Q. It's pretty difficult to remember back to when you were basically just an infant. Would you agree with that?
> A. Yes, sir, I would.
> Q. Now, you've never been diagnosed with having a photographic memory, have you?
> A. No, sir.
> Q. Or any other type of extraordinary memory capabilities --
> A. No, sir.
> Q. -- is that correct?
> A. That's correct.

(*See id*.). Counsel's affidavit submitted in conjunction with the state habeas application acknowledges that the question *could* be interpreted by the jury that counsel believed the incident actually happened, and counsel was only challenging the location of the abuse. (ECF 15-25, at 286-287). However, counsel also indicated that his strategy in pursuing this line of questioning was to challenge the victim's memory of events to attack her credibility overall – not to concede guilt. (*See id*.).

After the accusations by the victim came to light, Petitioner wrote the victim letters, indicating the following:

> [Victim's name], you've always been such an inspiration. How many times have I wished I was such a good person -- or a person as good as you. I will surely think of you both kindly every single day for the rest of my life, each and every time with absolute love and utmost respect.
> I can't pretend anymore. I've been discovered. Tried to hide so many times. [Victim's name], you're the best person I've ever met. None of this is anyone's fault but all mine. And that's the absolute truth.

(ECF 15-18, at 120-121). Other letters indicated:

> I hope they are wrong about heaven and hell because I'm a big sissy for what I deserve…I just wasn't strong enough, not as much as I wanted to be…
> I couldn't shake my demons. Damn them. Damn me. [Victim's name], you're an angel, the best person I've ever met…
> Always afraid of being found out. That's why I've never stayed in one place too long. Never good enough…
> I fooled a lot of people along the way. I should have been in prison 25 years ago…

(*See id*.).

In support of its verdicts, the jury received testimony from the two prior victims, Officer Downs, the victim, the victim's mother – who testified concerning the victim's outcry statements – and a friend who observed an incident of abuse. (ECF 15-16, at 171-296). While the victim was video chatting online (a.k.a. Skyping) with a friend, the friend observed the Petitioner enter the room and touch the victim's breast with his hand over the victim's clothes. (ECF 15-17, at 167-168). The friend testified unequivocally during trial that this touch was "intentional." (*See id*., at 169). In contradiction to the victim's allegations, the victim's mother testified that she initially believed the victim's story but later came to believe the allegations were exaggerated because the details given by the victim were not consistent during interviews at an attorney's office. (ECF 15-17, at 8).

### III.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

Petitioner's due process rights were violated when the state habeas judge of the 84th District Court failed to recuse himself from the habeas proceedings after participating as a prosecutor in the trial. Petitioner argues that this Court should decline to extend any deference to the lower court decisions under the Antiterrorism and Effective Death Penalty Act ("AEDPA") standards.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment through trial counsel's deficient performance: specifically, trial counsel's manner of framing his direct and cross-examination questions to particular witnesses implied Petitioner's guilt.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment by trial counsel's failure to file a motion in limine and failure to object to testimony concerning Petitioner's refusal to take a polygraph examination and Petitioner's request for counsel.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment by trial counsel's failure to object to testimony of a deputy's opinion concerning Petitioner's truthfulness: specifically, the deputy testified he believed the victim's allegations.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment by trial counsel's failure to object to the testimony of Petitioner's previous victim concerning her regrets about not coming forward sooner: specifically, that the previous victim believe she allowed Petitioner to assault the victim alleged in the indictment of these offenses.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when trial counsel failed to move for a mistrial after improper statements concerning the victim's veracity were made by the prosecutor during argument.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when trial counsel failed to challenge the cumulation order at the sentencing stage of his trial proceedings.

Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when appellate counsel failed to challenge the cumulation order.

(*See* ECF 1, at 6-7; ECF 2, at 12-28; ECF 12, at 1-2).

## IV.    **RESPONSIVE PLEADINGS**

On December 6, 2018, the Respondent filed an Answer with Brief in Support to the Petitioner's application. (ECF 12). Respondent argues that AEDPA's highly deferential standard should apply to Petitioner's claims and Petitioner's ineffective assistance of counsel claims fail to

meet the *Strickland* standard. (*Id.*, at 8-14, 17-25). Respondent also asserts that Petitioner's

cumulation order claims are meritless. (*See id.*, at 14-17).

On December 11, 2018, Petitioner filed his Reply to Respondent's Answer. (ECF 14).

Petitioner argues that Respondent's Answer entirely fails to address his crucial claim that the state

habeas proceedings violated due process and should result in this Court applying no deference to the

decisions of the state appellate court or the TCCA in these proceedings. (*Id.*, at 1-2). The Reply fails

to offer rebuttal of the Respondent's arguments concerning the cumulation order claims and focuses

solely on the ineffective assistance of counsel claims. (*See id.*, at 2-8).

## V.    STANDARD OF REVIEW AND RULE 5 STATEMENT

### A. Section 2254

A writ of habeas corpus on behalf of a person in custody under a state court judgment shall

not be granted with respect to any claim that was adjudicated on the merits in state court proceedings

unless the petitioner shows that the prior adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives

at a conclusion opposite to that reached by the United States Supreme Court on a question of law or

if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Hill v. Johnson*,

210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly

established precedent if it correctly identifies the applicable rule but applies it objectively

unreasonably to the facts of the case. *Williams*, 529 U.S. at 407–09; *see also Neal v. Puckett*, 286 F.3d

230, 236, 244–46 (5th Cir. 2002)(*en banc per curiam*)(focus should be on the ultimate legal

conclusion reached by the state court and not on whether that court considered and discussed every angle of the evidence). A determination of a factual issue made by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983). Thus, when the TCCA denies relief without written order, such ruling is an adjudication on the merits that is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hill*, 210 F.3d at 486.

If there is no reasoned state-court decision on the merits, "the federal court 'must determine what arguments or theories . . . *could* have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.' " *Sexton v. Beaudreaux*, __ U.S. __, 138 S. Ct. 2555, 2558 (2018)(quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (emphasis added). If such a disagreement among jurists is possible, then Petitioner's claim must be denied. *Id.*

A reasoned state court opinion is not required to determine whether a state court's decision resulted from an unreasonable legal or factual conclusion. *Harrington*, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was *no reasonable basis* for the state court to deny relief." *Id.* (emphasis added). This is so whether or not the state court decision reveals which of the elements (in a multi-part claim) it found insufficient. *Id.* Section 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Even where the state court does not cite applicable Supreme Court precedent or is unaware of

the precedent, deference is required so long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002)(*per curiam*). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. The standard was meant to be difficult to meet:

> § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (citations omitted).

In making its review, this Court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B. Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, the petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Missouri v. Frye*, 566 U.S. 133, 147 (2012). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000)(*per curiam*). "The likelihood of a different result must be substantial, not just conceivable," *Harrington*, 562 U.S. at 112, and a petitioner must prove that counsel's errors "so *undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly

deferential and the petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

**C. Rule 5 Statement**

Respondent does not assert that any of Petitioner's claims are barred by the statute-of-limitations, failure to exhaust, or successiveness.

## VI.    MERITS

**A. AEDPA Deference: State District Judge's Failure to Recuse in Habeas Matter**

Petitioner urges this Court to reject AEDPA's state-court presumption of correctness highly deferential standard of review that would typically be given to the Seventh Court of Appeals and the TCCA's opinions denying Petitioner's state habeas applications. Petitioner asserts that the state habeas proceedings involved the participation of a disqualified judge, rendering the proceedings fundamentally unfair and violative of due process. (ECF 2, at 20-22). The Court disagrees – both legally and, in this particular case, factually.

The presumption of correctness standard of review requires this Court to uphold the state court's denial of habeas relief, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This statutory provision requires that state court findings be afforded the presumption of correctness, with only the above two exceptions. Prior to the AEDPA amendments, Section 2254(d) provided in relevant part:

> a determination ... made by a State court ... evidenced by a written finding ... or other reliable and written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing; ...
>
> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding…
>
> (7) that the applicant was otherwise denied due process of law in the State court proceedings; …

28 U.S.C. § 2254(d) (1994) (repealed 1996).

"Once a petitioner established one of the situations set forth under § 2254(d)(1)-(7), such as the denial of a full and fair hearing, the presumption no longer operated; instead, the district court reviewed the claim de novo and reached its own independent factual determinations." *Valdez v. Cockrell*, 274 F.3d 941, 948–50 (5th Cir. 2001) (citing 28 U.S.C. § 2254(d) (1994) (repealed 1996) (providing where one of the situations in 2254(d)(1)-(7) was not shown "the burden shall rest upon the applicant to establish by clear and convincing evidence that the factual determination by the State court was erroneous"); *Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996) (" '[A] federal court is to accord a presumption of correctness to findings of state court proceedings unless particular statutory exceptions to § 2254(d) are implicated.' " (quoting *Williams v. Collins*, 16 F.3d 626, 631 (5th Cir. 1994)))). "Thus, this pre-AEDPA presumption 'merely erect[ed] a starting place or presumption, that [was to] be examined in light of the state court record.' " *Id*. at 949 (citing *Moore v. Johnson*, 194 F.3d 586, 603 (5th Cir. 1999)).

"The pre-AEDPA presumption of correctness was of limited application and … applied only to findings of fact." *Id.* (citing *Crane v. Johnson*, 178 F.3d 309, 311 (5th Cir. 1999); *Mason v. Balcom*,

531 F.2d 717, 722 (5th Cir. 1976)). The *Valdez* court determined that the new standard of deference under Section 2254(d), as amended in 1996, had no exception based on due process deficiencies in the state court proceeding:

> In 1996, Congress enacted AEDPA, Pub.L. No. 104–132, 110 Stat. 1214 (1996), amending § 2254. These amendments jettisoned all references to a "full and fair hearing" from the presumption of correctness accorded state court findings of fact, along with the other situations which previously swept aside the presumption. The presumption of correctness erected in its place at § 2254(e)(1), now simply provides that unless the petitioner can rebut the findings of fact through clear and convincing evidence, those findings of fact are presumed to be correct. To reintroduce a full and fair hearing requirement that would displace the application of § 2254(e)(1)'s presumption would have the untenable result of rendering the amendments enacted by Congress a nullity.

*Valdez*, 274 F.3d at 949-50 (citations omitted).

The "highly deferential standard" to be applied by federal courts under AEDPA is very exacting, and Petitioner's briefing acknowledges this exacting standard requires clear and convincing evidence that the state habeas decision was "contrary to law" or based on an "unreasonable determination of the facts" to thwart its application. (*See* ECF 2, at 17-19). However, Petitioner asserts:

> Judge Brancheau[3] decided that there were no controverted facts to be resolved and refused to sign the ODI [Order Designating Issues], conduct a hearing, or make findings of fact and conclusions of law. However, he was absolutely disqualified from taking any action because he represented the State at trial. Although [Petitioner's attorney] notified the [TCCA] the week after it received the habeas record that Judge Brancheau was disqualified, [the TCCA] refused to remand the case to the district court so that a conflict-free judge could preside over the habeas proceeding.
>
> Judge Brancheau should not have presided over the habeas proceeding because he had a personal interest in upholding the conviction. He exercised his discretion not to sign the ODI, conduct a hearing, and make findings of fact and conclusions of law. [Petitioner] **was denied due process of law in the state habeas proceeding**.

---

3 Judge Curtis Brancheau is the state court district judge of the 84th district court – the trial court where Petitioner's criminal convictions were sustained (ECF 12-1, at 8-17)– and was formerly the assistant district attorney for the 84th district attorney's office; he served as co-counsel during the trial of Petitioner. (*See* ECF 15-14, at 2) (noting attorney appearance for the state at trial as "Mr. Curtis Brancheau, Assistant District Attorney"); *see also* 84th District Court website at https://84thcourt.com/ (last accessed June 23, 2021) (stating "The Judge of the Court is Curt W. Brancheau. Judge Brancheau was sworn into office on January 3, 2017 after being elected on November 8th, 2016.").

(ECF 2, at 21). Thus, Petitioner's claim invokes the sixth and seventh exceptions to the application of Section 2254(d), *as they existed prior to the statutory amendments made by AEDPA*, "(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or (7) that the applicant was otherwise denied due process of law in the State court proceedings; …" *Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) (pre-amendment of section 2254(d) case finding exceptions to the presumption of correctness standard of review).

It is well settled that under the Due Process Clause of the Constitution, the accused in any *criminal* trial is guaranteed the right to a fair and impartial tribunal. *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *In re Murchison*, 349 U.S. 133, 136 (1955); *Bracy v. Gramley*, 520 U.S. 899, 905 (1997). However, the Due Process Clause establishes a constitutional floor, not a uniform standard. *Gramley*, 520 U.S. at 904–905. Accordingly, a trial judge's disqualification under either a state statute or code of judicial conduct does not ordinarily implicate the constitution. *Id.*; *Nichols*, 69 F.3d at 1277 (5th Cir. 1995) (citing *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) (noting that the federal statutory disqualification standard is "more demanding than that required by the Due Process Clause." Thus, conduct violative of state statutes may not constitute a due process deficiency)).

Petitioner correctly asserts that a state court trial judge must recuse himself from matters where he previously served as a prosecutor. The Texas Constitution and the Texas Code of Criminal Procedure both require the disqualification of a judge who has previously participated as counsel for the State in a pending matter. Constitutionally, a judge is disqualified from presiding over a criminal matter if he has "been counsel in the case." TEX. CONST. art. V, § 11.5. In addition, the Legislature has precluded a judge from presiding over "any case where ... he has been of counsel for the State or the accused[.]" TEX. CODE CRIM. PROC. art. § 30.01.

It is less clear whether this rule applies to habeas proceedings – which are civil, not criminal, in nature. Collateral proceedings are instead "civil in nature and are not part of the criminal proceeding itself." *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987). The Fifth Circuit has made clear that a separate claim attacking errors in state habeas proceedings cannot serve as a basis for setting aside a valid original conviction because it "is an attack on a proceeding collateral to the detention and not the detention itself." *Nichols*, 69 F.3d at 1275 (quoting *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987)); *see also In re Gentras*, 666 F.3d 910, 911 (5th Cir. 2012) (infirmities in state postconviction proceedings not grounds for relief under Section 2254); *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("It is axiomatic that infirmities in state habeas proceedings under state law are not a basis for federal habeas relief"); *Brown v. Dretke*, 419 F.3d 365, 378 (5th Cir. 2005) ("alleged infirmities in state habeas proceedings are not grounds for federal habeas relief"); *Duff–Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) (same); *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984) (same). The Eleventh Circuit has determined that the specific due process violations asserted by Petitioner concerning the state habeas proceedings are not federally cognizable for this reason. *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365–66 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). As such, they cannot form the basis for habeas relief. *See, e.g., Carroll*, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); *Quince*, 360 F.3d at 1262 (rejecting federal habeas petition alleging that the state judge presiding over the petitioner's post-conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

The Court finds that Petitioner has provided the Court with no authority to discard the highly deferential AEDPA standard based on arguments that procedural due process violations occurred during the state habeas proceedings. Further, such claims are not cognizable on federal habeas review,

and the TCCA declined to remedy any alleged procedural due process error when Petitioner requested reconsideration of the denial of habeas corpus. (*See* ECF 15-22, at 1-2). Thus, the Court finds there is no legal basis for this argument and the Court must apply the deferential AEDPA standard to its review of the state habeas court decision.

Even if there was a legal basis to discard the AEDPA standard based on procedural due process violations occurring during the state habeas proceeding, this Court finds there is not a factual basis for doing so in this instance. Petitioner asserts that Judge Brancheau failed to recuse himself, declined to issue findings of fact or conclusions of law, failed to hold an evidentiary hearing, and failed to sign the requested ODI. (ECF 2, at 21). These statements are not supported by the actual record, only the arguments of counsel. Thus, the Court finds that Petitioner's request for the Court to discard the highly deferential standard of review is also not supported by the facts.

When the trial court does not act on a writ of habeas corpus within the time prescribed by statute, it is deemed denied by operation of law:

> Within 20 days of the expiration of the time in which the state is allowed to answer, it shall be the duty of the convicting court to decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement. Confinement means confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus. If the convicting court decides that there are no such issues, the clerk shall immediately transmit to the Court of Criminal Appeals a copy of the application, any answers filed, and a certificate reciting the date upon which that finding was made. Failure of the court to act within the allowed 20 days **shall constitute such a finding**.

TEX. CODE CRIM. PROC. art. 11.07, §3(c) (emphasis added). The TCCA can remand the writ to the trial court if it finds that there are factual issues in dispute. *See id*. §5. Here, no findings of fact or conclusions of law were entered by the trial court, and the state habeas application was denied by the trial court by operation of law. Petitioner acknowledges that Judge Brancheau should not have entered any orders in the habeas case because of his disqualification, but argues that the state habeas proceeding is procedurally flawed because an independent trial judge did not make the decision not

to enter findings of fact and conclusions of law, hold an evidentiary hearing or sign the ODI. (ECF 2, at 21). This simply is factually incorrect. On the *same day* that the state habeas application was filed in the 84th District Court, the case was *transferred* to the 316th District Court for determination. (*See* ECF 15-25, at 331) (order signed by Judge Mosley of the 316th District Court, accepting transfer on February 14, 2018, indicating it was signed the same day the habeas application was filed in the trial court). Judge Brancheau was not the judge of the 316th District Court and did not preside over the decision to "deny" the habeas case by operation of law or deny the evidentiary hearing. To the extent that Petitioner argues he did not follow proper procedure in "recusing" himself, rather than transferring the case, the Court finds such argument is without merit and certainly would not constitute a fundamentally unfair proceeding.

In sum, the Court determines that, even if a state statutory violation resulting in a procedural due process error was cognizable on federal habeas review, the Petitioner has failed to establish that such a violation resulted in a fundamentally unfair review of his state habeas petition in this instance. The TCCA never requested findings of fact or conclusions of law to be able to resolve the Petitioner's claims, the relief now requested (remand to a neutral district court trial judge) was effected by the transfer of Petitioner's case to the 316th District Court on the day of filing, the TCCA was made aware of the alleged statutory violation and did not remedy the error, and Petitioner failed to show how a remand to an unbiased judge would fundamentally change the outcome of his proceedings. This is especially true because the TCCA did not find that factual findings were needed from the trial court and it would not be more likely that a remand would result in factual findings being issued.

### B. Ineffective Assistance of Counsel Claims: Trial Counsel

A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. The TCCA denied relief on Petitioner's state habeas corpus application without written order, and such ruling is an adjudication on the merits that is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

Because the state court's decision was unaccompanied by an explanation, Petitioner must show there was *no reasonable basis* for the state court to deny relief. *Id*. This includes whether the state habeas court could have found that Petitioner failed to establish prejudice under the *Strickland* standard. *See id*.

Here, Petitioner filed a state habeas application challenging the constitutionality of his convictions and sentences alleging the same grounds alleged in the instant federal habeas petition. Consequently, this Court's review is limited to a determination of whether Petitioner has shown by clear and convincing evidence that the state court's decisions that Petitioner was not denied effective assistance of trial or appellate counsel were based on an unreasonable determination of the facts in light of the evidence before the state court, or were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

To prove that defense counsel was ineffective, a petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

The court must analyze counsel's actions based upon the circumstances at the time—and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n. 9 (5th Cir. 1997).

### *Questioning of Victim*

Petitioner's first ineffective assistance of counsel claim – regarding counsel's questioning of the victim about an alleged incident of abuse – fails. This Court must give wide deference in any review of trial counsel's trial strategy. Petitioner asserts that counsel "disavowed" that his questioning was trial strategy, but the Court disagrees with Petitioner's interpretation of counsel's affidavit. (ECF 14, at 3). In fact, trial counsel clearly indicated by the affidavit that his strategy in cross-examining the victim concerning the incident was to challenge the victim's memory. (ECF 15-25, at 286-287). The fact that the questioning was perhaps not a perfect method by which to make such a challenge is not determinative of whether a strategy was employed, nor of whether counsel's performance was deficient. The TCCA has never required counsel's representation of a criminal defendant to be "error-free," or "perfect;" indeed, it has long held the exact opposite, even prior to the issuance of *Strickland*. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (right to effective assistance of counsel merely ensures the right to reasonably effective, not perfect, assistance; and does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight). It cannot be said that counsel's phrasing of this single question was "so ill chosen that it permeate[d]

the entire trial with obvious unfairness." *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Further, the questioning, taken in context as outlined *supra*, clearly indicates that counsel was challenging a memory of a three-year-old, rather than acknowledging that the crime actually occurred – despite counsel's letter submitted with the habeas application about how the question, taken alone, "could" be interpreted. Thus, Petitioner has failed to show that counsel's performance was not sound trial strategy to challenge the veracity of the witness.

Even if counsel's performance was deficient based solely on poor phrasing of a single question, a fair-minded jurist, given the volume of evidence of Petitioner's guilt, could have reasonably concluded Petitioner was not prejudiced by any deficiency in counsel's performance in this regard. First, counsel never "conceded" Petitioner's guilt to the jury, as in the cases cited by Petitioner in his briefing. Second, a single question was phrased in manner that *could* be interpreted to indicate an incident happened; however, given the context of the question, it was unlikely to be interpreted by the jury that counsel was acknowledging Petitioner's guilt. Third, the particular incident addressed by the question was not an incident alleged in the indictment against Petitioner at trial. Fourth, counsel's other questioning clearly challenged Petitioner's guilt and counsel's strategy was not to concede certain facts. Finally, Petitioner has not shown by clear and convincing evidence that this question, or counsel's phrasing, prejudiced the outcome of Petitioner's proceedings, given the weight of the evidence against Petitioner. Thus, Petitioner has not shown the state habeas court's determination of this ineffective assistance claim was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Petitioner's claim of ineffective assistance of counsel under this ground is without merit and should be denied.

### *Failing to File Motion in Limine*

Petitioner's second ineffective assistance of counsel claim – that his attorney failed to file a motion in limine regarding the evidence that Petitioner was asked and declined to take a polygraph examination – fails. Counsel objected to this testimony, and the judge instructed the jury to disregard it. (ECF 15-17, at 72-73). It is presumed that the jury will follow the judge's instructions. *See Ramon v. Quarterman*, 316 Fed. Appx 339, 344 (5th Cir. 2009). "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). This Court "presume[s] that such instructions are followed unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect of the improper statement is devastating." *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999) (internal alterations and quotation marks omitted). Petitioner points to nothing that would raise even the faintest probability that the jury was unable to follow the trial court's instruction to disregard this testimony. Thus, Petitioner has failed to show counsel's performance was deficient. Even if the failure to file a motion in limine was deficient, Petitioner has again failed to establish prejudice.

### *Failure to Object to Opinion Testimony*

Petitioner's third and fourth ineffective assistance of counsel claims – regarding the inadmissible opinion testimony of Officer Downs and a prior victim – also fails under a *Strickland* analysis. First, Respondent is correct that the "correctness of the state habeas court's interpretation of state law" underlying an ineffective assistance of counsel claim may not be reviewed by the federal court. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004). The TCCA reviewed Petitioner's exact ineffective assistance of counsel claims and did not find that the challenged testimony was both inadmissible and prejudicial. Second, the prior victim did not testify that the victim was telling the truth; rather, she testified that Petitioner had "hurt another victim." (ECF 15-17, at 202). Testimony crosses the line only when it provides a direct opinion as to the truthfulness of a witness, as opposed

to testimony that assists "the trier of fact to understand the evidence or to determine a fact in issue."

*Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). Thus, the prior victim did not testify

that the victim was telling the truth; rather, the prior victim was putting her testimony (her regret for

not coming forward sooner) into context. Additionally, Officer Downs testified concerning statements

made by Petitioner during a police interview. Specifically, Officer Downs testified:

> Q. And his response was, "So fully dressed, clothes on, wrestling or something, maybe grab her, grab or something, breast area with clothes on." Correct?
> A. Yes, sir.
> Q. Would you consider that an admission?
> A. Yes, sir.
> …
> Q. Okay. Let's go to -- on Page 6, I'm going to read for you the third answer. "But I – it'd happen and I'd be like, 'Oh, shit. Don't do that. What the hell are you doing?'"
> Two answers down, he says, "And I wouldn't -- and, you know, maybe a couple of months later or something, it would happen again. I'd be like, 'Shit, she's too old to wrestle – she's too old to wrestle with anymore. Don't do that.'"
> Would you consider that an admission?
> A. Yes, sir.
> Q. Okay. And we continue with that on Page 7. The fourth answer -- well, let me back up. So you asked him, "So you intentionally touched her?"
> And his answer was, "Not on purpose"; is that right?
> A. Correct.
> Q. And then he said -- the question -- you said, "Breast?" And what did he say after that?
> A. He said, "Wrestling or something, yeah, we would – we'd be wrestling and I would -- and it'd be like, 'No, wrestling's done, stop. Time to stop.'"
> Q. Okay. Now, I know he said that it hadn't been done on purpose, but would you take that as being intentional actions?
> A. Yes, sir.

(ECF 15-17, at 142-143). Thus, Officer Downs testified that he considered Petitioner's statements to

be admissions of guilt. (*See id*.). Officer Downs additionally testified that he interpreted Petitioner's

actions, based on Petitioner's own statements, as "intentional" touching. (*See id*.). The TCCA could

have interpreted Officer Downs' testimony as an explanation of his interview with Petitioner – that

Petitioner admitted certain behavior during his confession, but not as unequivocal testimony as to

Officer Downs' opinion of the truth of Petitioner's statements, even though such statements could be

interpreted to that effect. Thus, the Petitioner has not shown that the TCCA's opinion regarding counsel's alleged deficiency had no reasonable basis in law or fact.

Additionally, Petitioner must still show that the "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. During the trial, the victim testified in detail about Petitioner's abuse, prior victims provided substantially similar accounts of abuse, the victim's mother testified about the victim's outcries, the victim's friend testified about his observations of an incident of abuse, and the letters written by Petitioner following his arrest for the offense and his statements to Officer Downs clearly indicate guilt and remorse. This evidence remains uncontradicted. Due to the substantial evidence of Petitioner's guilt, this challenged testimony was too insignificant to have altered the outcome of the trial. *See Teague v. Scott*, 60 F.3d 1167, 1173 (5th Cir. 1995). As such, Petitioner cannot show prejudice.

### *Failing to Object to Prosecutor's Closing Argument and Move for a Mistrial*

Petitioner's final ineffective assistance of counsel claim regarding the guilt/innocence phase of trial – a failure to challenge the prosecutor's closing arguments – also fails. It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy." *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir.1992). The United States Supreme Court has held that federal habeas courts are not to second-guess counsel's strategic decisions through the distorting lens of hindsight but instead are to employ a strong presumption that the conduct falls within a wide range of reasonable assistance. *Strickland*, 466 U.S. at 689; *see also Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993); *Rios–Delgado v. United States*, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy."). Once again, the prosecutor's opinion of the victim's truthfulness would not have altered the outcome

of the trial, based on the weight of the evidence. *See id*. Thus, the Court denies Petitioner's claims regarding counsel's deficient trial performance during the guilt/innocence phase of his trial.

### C. Ineffective Assistance of Counsel Claims: Cumulative Orders

Petitioner argues that both his trial counsel (during the punishment phase) and his appellate counsel provided ineffective assistance through the failure to object to the state trial judge's decision to run his 20-year sentences on each of his ten convictions for indecency with a child, consecutively – for a total of a 200-year sentence. The Court disagrees.

To prevail on an improper-stacking claim, Petitioner would have to show that the trial court abused its discretion, but he cannot do so on this record because the judge's ruling was authorized by law. TEX. PENAL CODE 3.03(b)(2)(A); *Bonilla v. State*, 452 S.W.3d 811, 815 (Tex. Crim. App. 2014); *see also Ex parte Scott*, 541 S.W.3d 104, 118 (Tex. Crim. App. 2017). Texas law provides:

> (b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences **may run concurrently or consecutively if each sentence is for a conviction of:**
> (1) an offense:
> (A) under Section 49.07 or 49.08, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or
> (B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections;
> (2) an offense:
> (A) under Section 33.021 or **an offense under Section** 21.02, **21.11**, 22.011, 22.021, 25.02, or 43.25 committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section; or

TEX. PENAL CODE § 3.03 (emphasis added). Petitioner was convicted under Section 21.11(a)(1). (ECF 15-12, at 185-193). His sentences were stacked under Texas Penal Code § 3.03. (*See id*.). The trial judge had discretion under the law to stack the sentences. Petitioner has not argued that the offense does not meet the "same criminal episode requirement," but rather argues that the law prevents the

imposition of stacked sentences in a single criminal judgment. This is unsupported by law, and the Court notes that the Petitioner abandoned this argument in his Reply, following the Respondent's Answer. Thus, Petitioner's ineffective assistance grounds must be denied, as the attorney had no legal basis to challenge the stacked sentences and there is no evidence a different result would have occurred in the event of an objection to the stacked sentences.

## VII.     RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by Petitioner Bobby Raymond Anderson be DENIED.

## VIII.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 30, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).